# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1291


**STATE OF LOUISIANA**

**VERSUS**

**ROCKY BOURG**

**\*\*\*\*\*\*\*\*\*\***
APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07-K-3432-A
HONORABLE JAMES P. DOHERTY, PRESIDING
**\*\*\*\*\*\*\*\*\*\***

## SYLVIA R. COOKS
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Ulysses G. Thibodeaux, Chief Judge, Sylvia R. Cooks, and
Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Earl J. Taylor**
**District Attorney, 27ᵗʰ Judicial District**
**P.O. Drawer 1968**
**Opelousas, LA 70570**
**(337) 948-3041**
**COUNSEL FOR APPELLEE:**
> **State of Louisiana**

**Peggy Sullivan**
**Louisiana Appellate Project**
**P.O. Box 2775**
**Monroe, LA 71210-2775**
**(318) 387-6124**
**COUNSEL FOR DEFENDANT-APPELLANT:**
> **Rocky Bourg**

**COOKS, Judge.**

On May 27, 2008, Defendant, Rocky Bourg, was convicted, by jury, of one count of first degree robbery, in violation of La.R.S. 14:64.1. This was a responsive verdict as Defendant was originally charged with armed robbery. Defendant was subsequently sentenced to serve fifteen years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant received credit for time served. Immediately following imposition of Defendant's sentence, the defense verbally moved for reconsideration, and the trial court denied relief.

Although the record showed Defendant filed a "Motion for Post Verdict Judgment of Acquittal" on August 1, 2008, the record contains no ruling on the motion. Defendant appealed, and this court found the trial court erred in failing to rule on Defendant's "Motion for Post Verdict Judgment of Acquittal," vacated Defendant's sentence, remanded the case for disposition of Defendant's motion, and preserved Defendant's right to appeal his conviction and sentence. *State v. Bourg*, an unpublished opinion bearing docket number 08-1353 (La.App. 3 Cir. 4/15/09).

On remand, the district court conducted a hearing on Defendant's "Motion for Post Verdict Judgment of Acquittal" on September 3, 2009, and denied relief. Thereafter, the district court, for reasons given, re-sentenced Defendant, ordering him to serve fifteen years at hard labor and credited Defendant for time served. Although the district court was silent as to Defendant's eligibility for probation, parole, and suspension of sentence, by operation of law such benefits are denied to him. La.R.S. 15:301.1(A); La.R.S. 14:64.1.

Defendant again appeals his conviction and sentence. For the following reasons, we affirm.

<u>                                </u>**FACTS**

At trial, James Seraile was the first witness to testify for the prosecution. Mr. Seraile was disabled, and, as a result, he received disability income from Social Security. Mr. Seraile dropped off his niece, Lakeba Stoner, for work at the Alligator Truck Stop on July 7, 2007. Mr. Seraile returned later that evening and went into the store and made a purchase. Mr. Seraile's wallet contained approximately $1,000.00 in cash as a result of previously cashing his disability check. Mr. Seraile first noticed Defendant at the checkout counter in the store. Defendant asked for a ride to another nearby truck stop, which had a restaurant and casino. Mr. Seraile agreed to provide Defendant transportation.

Mr. Seraile stated that when they arrived at the second truck stop, Defendant instructed him to park on the side, telling Mr. Seraile that someone was supposed to meet Defendant. When Mr. Seraile parked, Defendant held a straight-bladed knife to Mr. Seraile's throat. Mr. Seraile had not seen the nine to twelve-inch knife before, and assumed he must have been carrying the weapon in his pocket. Defendant then demanded Mr. Seraile hand over all of his money.

Mr. Seraile said he told Defendant he did not have his wallet. Mr. Seraile's wallet was in his sun visor on the passenger side, which Defendant was not aware of. Mr. Seraile grabbed Defendant's hand, "tussling" to keep the knife from cutting him, unfastened his seatbelt, and exited the car. Once outside, Mr. Seraile ran toward the store; he fell, bruised his ankle, and had to limp into the store. Mr. Seraile was treated at the hospital emergency room for his injury.

Mr. Seraile asserted that, by the time he reported the crime to the young lady inside, Defendant had driven away in his car. Officer Jimmy Sylvester, with the St. Landry Parish Sheriff's Office, investigated the problem and obtained a description

of Mr. Seraile's automobile. Officer Sylvester took Mr. Seraile to Port Barre, where the police had located Defendant with Mr. Seraile's car. Mr. Seraile identified Defendant as the perpetrator.

On cross-examination, Mr. Seraile stated he used both hands to struggle with Defendant, and was neither cut nor scratched by the knife. When Mr. Seraile fled the car, Defendant pursued him through the driver's side and to the door of the store. When Mr. Seraile's car was returned, his wallet was still tucked away in the passenger-side visor.

Lakeba Stoner, Mr. Seraile's niece, was the second witness to testify for the State. She testified Mr. Seraile drove her to work on July 7, 2007. After dropping Ms. Stoner off, Mr. Seraile left. Mr. Seraile, who usually drove Ms. Stoner home after her shift, typically arrived earlier than necessary and sat with her until it was time for her to leave. On that date, she testified Mr. Seraile acted in accordance with his routine and returned before the end of her shift and spoke with her. While Mr. Seraile was present, Ms. Stoner conversed with Defendant.

Ms. Stoner recalled Defendant was talking to her at the counter when Mr. Seraile approached the register and made his purchase. Ms. Stoner stated that her uncle had his cash envelope in his wallet when he paid for his purchase. Mr. Seraile left the store, then walked back inside. At Defendant's request, Mr. Seraile spoke with him. After the conversation, Mr. Seraile informed Ms. Stoner that Defendant had asked for a ride to another store. Defendant told her that Mr. Seraile would be "right back." Mr. Seraile did not return; instead, she received a telephone call and an explanation about what had transpired from a woman working at the other truck stop. Ms. Stoner clearly remembered Defendant from that evening. While at the store that evening, Defendant had written his name and phone number on a piece of paper and

had given it to Ms. Stoner. Although Ms. Stoner had already thrown away the piece of paper, she told the police about the paper and gave them the name Defendant had written.

Officer Sylvester was the third witness to testify for the prosecution. He was the officer who responded to the call about the incident. When he arrived, he spoke with Mr. Seraile, who was "shaken up," nervous, and irate. Mr. Seraile had scrapes on his legs. Officer Sylvester was told by Mr. Seraile that his car was missing. During the conversation, the vehicle traveled past, and Mr. Seraile pointed it out to Officer Sylvester.

Officer Sylvester testified he immediately called for assistance in stopping the vehicle. Officer Sylvester also attempted to catch the automobile, but after being unsuccessful, he returned to the truck stop. While there, he learned the vehicle had been apprehended, and he drove Mr. Seraile to Port Barre where the vehicle had been stopped. Officer Sylvester looked for a knife, but did not find one.

Officer Sylvester identified Defendant as the car's occupant and Mr. Seraile's assailant. He also testified Mr. Seraile was able to recover his wallet from the car's visor. On cross-examination, Officer Sylvester said Defendant claimed Mr. Seraile had let him use the car. Mr. Seraile denied allowing Defendant to use his vehicle; he maintained that Defendant had held a knife to his throat.

Officer Charlie Ford, with the Port Barre Police Department, was the last witness to testify for the prosecution. On July 7, 2007, Officer Ford received a dispatch advising him to be on the lookout for a white Lincoln Town Car being driven by a young white male. As a result, Officer Ford was able to stop the described vehicle. Defendant was nervous and sweating when Officer Ford stopped him in the vehicle. Officer Ford patted Defendant down, but did not recall finding

any weapons on his person or in the vehicle.

On cross-examination, Officer Ford said Defendant told him he had borrowed the automobile from a man at a gas station. Mr. Seraile took possession of the car and left. Following Officer Ford's testimony, the State rested, subject to rebuttal.

The defense began with Defendant's testimony. Initially, Defendant's account paralleled that given by Mr. Seraile and Ms. Stoner. However, Defendant stated he offered Mr. Seraile crack cocaine in exchange for the ride. Mr. Seraile seemed hesitant, but he told Defendant they would discuss it on the drive to the other store. Defendant said that, from this comment, he understood that Mr. Seraile would let him use his car in exchange for crack cocaine.

Defendant denied giving Mr. Seraile instructions regarding parking. Defendant said Mr. Seraile parked where he did so that Defendant could give him the crack cocaine. Defendant stated he handed Mr. Seraile a bag of crack cocaine and told him to select five rocks. Defendant testified Mr. Seraile grabbed the bag, unbuckled his seatbelt, and ran from the car, which was still running. Defendant said he left in the car because the trade was supposed to be use of the car for the drugs. Defendant stated he was high at the time the events transpired. Defendant related that he was "pretty sure" he did not have a weapon in his possession at that time. Defendant maintained he was sweaty when he was stopped by Officer Ford because he was high on drugs.

On cross-examination, Defendant acknowledged he had a felony conviction for battery of a corrections officer. Defendant said there was a total of seven rocks of crack cocaine in the bag he handed Mr. Seraile. Defendant did not think his actions constituted distribution of cocaine. Defendant said he was supposed to meet Mr. Seraile back at the truck stop when he was finished with his task. Defendant said he

had cash and dope stashed under a friend's trailer. Defendant did not recall passing back in front of the store once he left.

When the prosecutor asked Defendant to clarify what he meant when he stated he was "pretty sure" he was not armed, Defendant said he remembered not having a weapon. Defendant explained he was under the influence of marijuana and crack. Defendant said he told Mr. Seraile that he was going to Krotz Springs and would return as soon as he picked up the money and drugs.

The defense next called Officer Sylvester as its final witness. Officer Sylvester stated that being high on crack cocaine could lead to dilated eyes and sweating, so it was not unusual for someone high on crack cocaine to be sweating in the heat at that time of year.

After the defense rested, the State recalled Mr. Seraile to testify in rebuttal. Mr. Seraile denied Defendant offering him crack cocaine. Mr. Seraile also denied both taking and stealing crack cocaine from Defendant. Mr. Seraile maintained he never agreed to let Defendant use his car in exchange for drugs. On cross-examination, Mr. Seraile explained he only left his niece that evening and gave Defendant a ride because he thought he would be able to return immediately.

## I.    *Insufficiency of the Evidence.*

We first address Defendant's *pro se* assignment of error that "the evidence was insufficient to support the conviction for first degree robbery." "When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence." *State v. Hearold*, 603 So.2d 731, 734 (La.1992). Defendant alleges the State's case was based solely on Mr. Seraile's testimony, and Mr. Seraile was not a credible witness because he suffers from schizophrenia. Defendant also argues Mr. Seraile's

testimony was "unlikely." Defendant asserts that, if Mr. Seraile had struggled with a perpetrator thirty years younger and armed with a nine to twelve-inch knife, Mr. Seraile would have been harmed. He argues the "incredible nature" of Mr. Seraile's testimony is supported by the jury's returning with a first degree robbery verdict in lieu of guilty as charged of armed robbery.

The supreme court has discussed the standard for review sufficiency of the evidence claims:

> The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). A determination of the weight of evidence is a question of fact, resting solely with the trier of fact who may accept or reject, in whole or in part, the testimony of any witnesses. A reviewing court may impinge on the factfinding function of the jury only to the extent necessary to assure the *Jackson* standard of review. It is not the function of an appellate court to assess credibility or re-weigh the evidence.

*State v. Macon*, 06-481, pp. 7-8 (La. 6/1/07), 957 So.2d 1280, 1285-86 (citations omitted).

Thus, it is not the function of this court to examine whether Mr. Seraile's credibility was impinged by his schizophrenia when the jury found Mr. Seraile was a credible witness. Although the record shows that the victim suffered from schizophrenia and was taking medication for this condition, the record does not contain any information about Mr. Seraile's type of schizophrenia or whether Mr. Seraile's condition was not responsive to the medication.

Further, the fact that a knife was not found on Defendant is not conclusive of the non-existence of such an item in his possession; Defendant could have easily disposed of the item before he was stopped. Additionally, the actual existence of a dangerous weapon is not an element of the offense; instead, first degree robbery

requires the victim to reasonably believe that the offender was armed, so any item resembling a knife would have satisfied the element of the offense if Defendant's use thereof reasonably led the victim to believe it was a knife. *See* La.R.S. 14:64.1. We also note Defendant testified did not remember with certainty whether he had been armed at the time.

Moreover, the only information in the record to contradict Mr. Seraile's overall account of events was Defendant's own self-serving testimony, which was inconsistent with Mr. Seraile's plan to provide his niece with transportation home. There is nothing in the record that would impugn Mr. Seraile's credibility.

"First degree robbery is the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." La.R.S. 14:64.1(A). "A conviction for first degree robbery may be supported by direct testimony from the victim that he believed the defendant was armed." *State v. Boyance*, 05-1068, p. 8 (La.App. 3 Cir. 3/1/06), 924 So.2d 437, 442, *writ denied*, 06-1285 (La. 11/22/06), 942 So.2d 553. "It [La.R.S. 14:64.1(A)] requires the state to prove that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon, and that the victim's belief was objectively reasonable under the circumstances. The statute thus excludes unreasonable panic reactions by the victim but otherwise allows the victim's subjective beliefs to determine whether the offender has committed first degree robbery or the lesser offense of simple robbery in violation of La.R.S. 14:65." *State v. Fortune*, 608 So.2d 148, 149 (La. 1992).

The record shows that the victim was in possession of his car when Defendant pulled what the victim thought was a knife, held the weapon to the victim's throat,

and demanded the victim's wallet. Afraid for his life, the victim struggled to get the weapon away from his throat and exited his vehicle. Defendant then drove away in the victim's car. Thus, the State showed that Defendant took an item of value by introducing evidence that Defendant drove away in the victim's car. The prosecution further showed that the item of value belonged to another; the victim, not Defendant, owned the car. The State also proved that the car was in the immediate control of another; the victim was sitting in the driver's seat. The prosecution additionally showed Defendant used force or intimidation to accomplish the taking; Defendant physically menaced the victim by holding an item to the victim's throat. Finally, the State introduced evidence showing the victim reasonably believed Defendant was armed with a dangerous weapon; the victim saw a knife, and Defendant used the item in a manner consistent with the use of a knife as a weapon.

When the evidence is viewed in the light most favorable to the prosecution, there is little doubt a "rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Accordingly, this assignment of error is without merit.

## II. Excessive Sentence.

In his attorney filed brief, Defendant claims, "[t]he sentence imposed was unconstitutionally harsh and excessive given the facts and circumstances of this case." It is agued the trial court failed to give adequate weight to the mitigating factors in his case: Defendant's upbringing in the foster care system, Defendant's minimal education, his lack of job skills, his relative youth, and his drug addiction.

When the trial court imposed its original sentence, it gave the following reasons for the penalty imposed:

> THE COURT: Let me comment, first of all, Mr. Bourg, in connection with the condition of your mother. I am truly sorry for the

condition that your mother is in[,] but this is a typical example of people who get in trouble then later on want to have a family relationship which they have may not had in the past and that's one of the consequences of you getting in trouble, that your life and your connection to your family is interrupted but that's just one of the consequences of violating the laws and being sentenced in our state.

. . . .

THE COURT: The Court has before it Rocky Bourg, a twenty year old who was found guilty by a jury on May 27th, 2008[,] to [sic] the crime of first degree robbery.

Mr. Bourg was born in Gretna, Louisiana. He claims he has never had a relationship with his father, his father having died in 2004. He was raised by his mother in the Gretna area[,] but he was taken from his mother by the State in 1996. He indicates that his mother is a drug addict and she could not care for him and that she had been a drug addict for as long as he can remember. He was removed from the custody of his mother when he was nine years old[,] and he's lived in detention centers and foster homes from age nine until the time he was an adult. He's been in the following group homes: Bridge City Detention Center two times, Coushatta Detention Center, St. James Detention Center, Scottlandville [sic] Detention Center[,] and between the times he was in detention centers, he lived in foster homes in Houma, Minden, Richard, Louisiana.

He has no family support whatsoever. His only relatives he can identify with are his mother, who he thinks lives someplace in New Jersey, and [a] sister who is someplace in Louisiana. He does not maintain any contact with family members. He has no children.

He clams to have obtained a GED in 2005 but [he also] claims he can barely read and write. He has no job training or skills and has never been gainfully employed.

In the PSI, he indicated he wanted the victim to know that he was sorry for what he had done and he's asked God to forgive him for his crime. He states that he was under the influence of crack cocaine when the offense was committed and he's asking sympathy from the Court when he's sentenced.

His adult criminal history, even though the Court notes he has an extensive juvenile record, includes two felony convictions for battery of a correction facility employee and battery of a police officer. Both of these occurred in Jefferson Parish in 2005. He served one year concurrent -- I'm sorry. One year on each charge running consecutively. He is officially classified as a second felony offender and he also had pending in St. Landry Parish a second degree battery of a correctional officer, two counts. This occurred June 13, 2008. Needless to say, he

has not been the most model prisoner while he has been housed in the St. Landry Parish Jail.

He is not eligible for a suspended sentence or placement on probation as the instant offense carries a mandatory hard labor sentence. He's not eligible for the IMPACT Program although the Court, in its own wisdom, believes that IMPACT may be one of the things that's needed, some structure, in this defendant's life. He is ineligible, however, for that program.

The Court takes into consideration that the goals of sentencing are rehabilitation, deterrence and protection of the public. That, in keeping with Article 894.1 of the Code of Criminal Procedure, the Court is not comfortable with the idea that Mr. Bourg would not commit another crime if in fact he could get a suspended sentence. Secondly, a sentence other than incarceration would deprecate the seriousness of this particular offense and the Court also feels that he needs some type of incarceration in this matter.

The Court has taken into consideration both mitigating and aggravating circumstances in this matter. The most mitigating circumstance in this case is the fact that Mr. Bourg appears to have a problem with drugs that has not been, at least from the PSI, adequately addressed[,] but the Court can address that issue in the sentencing that it's going to fashion in this particular case.

In connection with this matter, the Court has decided that it is going to sentence Mr. Bourg to 15 years at hard labor without the benefit of probation, parole or suspension of sentence. The Court, in this particular case, is going to recommend Mr. Bourg to the Blue Waters program at the conclusion or towards the conclusion of his sentence.

Mr. Bourg, you are going to be given credit for time served.

On remand, the trial court conducted a re-sentencing hearing. This time, the defense asked for leniency based on Defendant's completion of anger management and twelve-step programs, Defendant's participation in culinary arts classes, Defendant's requesting a copy of his GED certificate so he could take college courses, and Defendant's difficulties during childhood.

The trial court summarized its findings at the earlier sentencing hearing and asked if anything had changed. Defendant volunteered that he had since been in contact with his sister, and they had established a relationship. Defendant also

informed the court that he was currently being tutored, but he intended to enroll in business management courses once he obtained a copy of his GED certificate. Defendant added that he had entered into a plea agreement in reference to the battery of a corrections officer charges that had been pending against him at the time of his original sentencing; Defendant pled guilty to one charge and received a one-year sentence.

The trial court, giving reasons for its decision, then re-sentenced Defendant to fifteen years at hard labor:

> THE COURT: The problem that the Court has in this matter is he's not eligible for a suspended sentence or placement on probation because it carries a mandatory hard labor sentence. He's also not eligible for the IMPACT Program although I felt at the time, and I still feel, that the IMPACT may have been one of the things that you needed in order to provide some structure in your life.
>
> The Court has previously and at this time takes into consideration the goals of sentencing to be rehabilitation, deterrence and protection of the public in keeping with Article 894.1 of the Code of Criminal Procedure, the Court has expressed that because of your past, Mr. Bourg, I'm not satisfied or at ease that you would not commit any additional crimes if you were given a probated sentence which I cannot give you in this case. Also[,] the Court finds that incarceration is warranted for this particular matter. What the Court has had a hard time in this matter is you're an enigma, Mr. Bourg. The Court recognizes that you had a bad life in the past and what do you need to do in order to rehabilitate that life. I thought long and hard about your original sentence that was imposed in this[,] and I've also taken into consideration re-sentencing you in this case. I acknowledge that you are trying to better yourself in connection with this matter[,] but the Court cannot and has not been swayed in any way where 15 years is not an appropriate sentence in this case. The Court re-sentences you on these charges to 15 years at hard labor [with credit for time served].

This court has previously discussed the standard for reviewing excessive sentence claims:

> [Louisiana Constitution Article] I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution

to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate.

*State v. Barling*, 00-1241, 01-1591, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042, *writ denied*, 01-838 (La. 2/1/02), 808 So.2d 331 (citations omitted).

In deciding whether a sentence is shocking or makes no meaningful contribution to acceptable penal goals, an appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case."

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La. 5/30/03), 845 So.2d 1061 (citations omitted). "[T]he trial judge need not articulate every aggravating and mitigating circumstance outlined in art. 894.1[;] the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant." *State v. Smith*, 433 So.2d 688, 698 (La.1983).

"Whoever commits the crime of first degree robbery shall be imprisoned at hard labor for not less than three years and for not more than forty years, without benefit of parole, probation or suspension of imposition or execution of sentence." La.R.S. 14:46.1(B). Thus, Defendant's fifteen-year penalty fits within the statutory sentencing range. It is less than half the maximum penalty allowed by law.

In *State v. Washington*, 05-210 (La.App. 5 Cir. 10/12/05), 917 So.2d 488, the fifth circuit affirmed an eighteen-year sentence for first degree robbery under less aggravating circumstances and in the presence of more mitigating considerations.

Washington had no prior criminal convictions, there had been no proof introduced at trial that Washington had a weapon during the robbery, he had a history of mild mental retardation and severe depression, the victim was never physically harmed or even touched during the robbery, and, when apprehended, Washington cooperated fully with the police. The fifth circuit concluded the sentencing court acted within its broad discretion.

Thus, considering Defendant's extensive criminal history, the use of an actual weapon in the offense, the danger of Defendant committing further offenses upon his release, Defendant's failure to attempt to make a living by reputable means prior to his conviction for the instant offense, and the fact that Defendant received a more lenient penalty than that imposed in *Washington*, we find the trial court did not abuse its discretion in sentencing Defendant to fifteen years at hard labor.

## DECREE

For the foregoing reasons, Defendant's conviction and sentence are affirmed.

**AFFIRMED.**